**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ROBERT LIGON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| | ) | **CASE NO. 3:13-00698** |
| **vs.** | ) | **JUDGE SHARP/KNOWLES** |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | | |

## REPORT AND RECOMMENDATION

This matter is before the Court following an Evidentiary Hearing held on October 15, 2014. Judge Sharp previously referred this federal habeas action to the undersigned "with instructions to conduct an Evidentiary Hearing to determine whether the petitioner did in fact ask his attorney to file an appeal." Docket No. 20. Judge Sharp's Order further provided, "Based upon the Magistrate Judge's findings, a recommendation shall be made as to the disposition of petitioner's ineffective assistance claim." *Id.*

Judge Sharp has previously set forth the facts of Petitioner's underlying criminal cases as follows:

> On August 20, 2012, the petitioner pled guilty to conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine and 280 grams or more of crack cocaine. United States of America v. Robert Ligon, Criminal No. 3:11-00012 (M. D. Tenn.); Docket Entry No. 1154. He also pled guilty to being a convicted felon in possession of a firearm. United States of America v. Robert Ligon, Criminal No. 3:12-00167 (M.D. Tenn.).
>
> For the conspiracy conviction, the petitioner received a sentence of 180 months in prison, to be followed by five years of supervised

> release. The firearm conviction brought the petitioner a concurrent
> sentence of 120 months in prison, to be followed by three years of
> supervised release. Criminal No. 3:11-00012; Docket Entry No.
> 1155.

Docket No. 19, p. 1-2.

The Petitioner agreed to plead guilty to these charges, pursuant to a written plea agreement under Fed. R. Crim. P. 11(c)(1)(C). Case No. 3:11-cr-0012, Docket No. 1154. As part of the agreement, the Government agreed not to file an Information under 21 U.S.C. § 851, which would have increased Ligon's mandatory minimum sentence to 20 years imprisonment and 10 years supervised release. Docket No. 37, p. 70-71.

On August 20, 2012, at the request of the Petitioner, Judge Wiseman conducted a joint plea and sentencing hearing. During the hearing, Judge Wiseman discussed the terms of the agreement and the appellate-waiver provision with the Petitioner. Docket No. 3:11-cr-00012, Docket No. 1983, p. 12. Petitioner acknowledged that he understood and agreed to the terms of the plea agreement, signed the plea agreement, and was sentenced based on those terms. The written plea agreement executed by Defendant states in part:

### Waiver of Appellate Rights

> 18. Regarding the issue of guilt, defendant hereby waives all (i)
> rights to appeal any issue bearing on the determination of whether
> he is guilty of the crime to which he is agreeing to plead guilty; and
> (ii) trial rights that might have been available if he exercised his
> right to go to trial. Regarding sentencing, Defendant is aware that
> 18 U.S.C. § 3742 generally affords a defendant the right to appeal
> the sentence imposed. Acknowledging this, defendant knowingly
> waives the right to appeal any sentence of a term of 180 months
> imprisonment and a five year term of supervised release as to
> Count One of case 3:11-00012, and a concurrent term of ten years
> imprisonment and three years supervised release as to the charge in
> the information in Case 3:12-00167 as agreed herein. . . .

> However, no waiver of the right to appeal, or to challenge the
> adjudication of guilt or the sentence imposed in any collateral
> attack, shall apply to a claim of involuntariness, prosecutorial
> misconduct, or ineffective assistance of counsel.

Docket No. 1154, p. 21-22.

On July 15, 2013, Petitioner filed a pro se petition for habeas corpus relief pursuant to 28 U.S.C. § 2255. Docket No. 1. Defendant asserted in part that his counsel in the underlying criminal action rendered ineffective assistance of counsel because he failed to file a notice of appeal after Defendant had asked him to do so.[1] Docket No. 1, p. 2.

The Court held the evidentiary hearing on October 15, 2014, and a transcript of the proceedings has been filed. Docket No. 37. Two witnesses testified at the hearing: Petitioner Robert Ligon and his former counsel Roger "Bo" Taylor.

Mr. Ligon testified that Mr. Taylor had come to see him "a few times" around the end of July 2012, when Mr. Ligon was in custody in Bowling Green. Docket No. 37, p. 15-16. During that period of time, Mr. Taylor and AUSA Sunny Koshy were discussing the terms of the possible plea agreement. Mr. Taylor told Mr. Ligon that the proposal from Mr. Koshy was that if Mr. Ligon "was assigned for 15 years that [he] would not be charged with the guns . . . ." Mr. Ligon told him, "if you can get me that plea deal, I'll take 15 years and I'll plead out as soon as possible." *Id.,* p. 16-17. Mr. Ligon was concerned about pleading to the gun charge because he was afraid that could be detrimental to his attempts to get into BOP programs. Docket No. 37, p. 77-78.

At some point around August 10, Mr. Ligon received a letter from Mr. Taylor stating that

---

[1] He also raised a sentencing claim, which Judge Sharp has previously rejected. Docket Nos. 19, 20.

"the guns would not be dropped." *Id.*, p. 18. When Mr. Ligon was transported to this Court on August 20, 2013, for his plea and sentencing, Mr. Taylor again told him that Mr. Koshy "was not dropping the guns." *Id.*, p. 19. He discussed this point with Mr. Taylor on August 20. *Id.* Mr. Taylor told him there was really nothing they could do about that but that Mr. Ligon's sentence would still be only 15 years. *Id.*, p. 19, 21.

Shortly before Mr. Ligon pled guilty and was sentenced by Judge Wiseman on August 20, he appeared before the undersigned for a Waiver of Indictment by the Grand Jury on the gun charges. Case No. 3:12-00167, Docket No. 6. Mr. Ligon testified that he had come into the undersigned's courtroom prior to being taken to Judge Wiseman's courtroom. Docket No. 37, p. 14. He testified that he was in the undersigned's courtroom when he directed Mr. Taylor to file an appeal. *Id.*, p. 26. In other words, Mr. Ligon testified that the only time he instructed Mr. Taylor to file a Notice of Appeal was *before* he pled guilty pursuant to his plea agreement.

Mr. Ligon knew, at the time he pled guilty, that the plea agreement did not drop the gun charge. *Id.*, p. 19, 21. He testified that getting rid of the gun charge was "a substantial reason for [his] entering into the plea." *Id.*, p. 21. At the same time, however, he clearly agreed that he knew, before he entered into the plea agreement, the gun charge would not be dropped. *Id.*, p. 19. He also knew that the Government, instead of charging him with being a convicted felon in possession of a firearm, could have charged him with the more serious offense of possession of a firearm in furtherance of a drug trafficking crime, pursuant to 18 U.S.C. § 924(c). Docket No. 37, p. 41. He further knew that any sentence he might receive under § 924(c) would be worse than a sentence for simply being a convicted felon in possession of a firearm, because the 924(c) sentence would have to run consecutively to any term he might receive for the drug conspiracy

4

charge. *Id*., p. 42.

Mr. Ligon could have had a delay of three or four months between his plea of guilty and his sentencing. *Id.,* p. 36. He asked, however, if he could go ahead and do the sentencing the same day as the plea agreement. *Id*., p. 37. He did this partly so he could get out of local custody and move on to federal custody. *Id*., p. 37.

In early October, after Mr. Ligon had been transferred to federal prison, he wrote the Clerk of this Court asking for a docket sheet. *Id*., p. 29. He realized then that an appeal had not been filed. *Id.,* p. 29-30. He testified that he "eventually" filed the instant action (on July 15, 2013). *Id*., p. 30, Docket No. 1, p. 1.

Mr. Taylor testified that at the time he represented Mr. Ligon, he had been practicing for about 20 years in federal court as a criminal defense lawyer. *Id*., p. 66-67. He has previously filed Notices of Appeal in a variety of cases. *Id*. He was aware that a person could appeal, even if he pled guilty. *Id*., p. 68. He testified that, with regard to the parts of his file he could locate, there was no indication of a request to file a Notice of Appeal. *Id*., p. 68. He does not recall Petitioner asking him to file a Notice of Appeal after he was sentenced. *Id*., p. 69. If Petitioner had done so, he would have filed the Notice of Appeal. *Id*. There would have been no detriment to him in simply filing the Notice. *Id*. If Petitioner had asked him to file a Notice of Appeal, he would have explained to Petitioner what the waiver meant and the situation that Petitioner was in regarding the waiver, but he does not recall that "at all." *Id*., p. 69-70.

Based upon the proof adduced at the Evidentiary Hearing, the Court finds as a fact that Petitioner did not ask his attorney to file an appeal. The Court so finds for several reasons.

First, the undersigned closely observed the witnesses as they testified, and the Court finds

that Petitioner was not a credible witness. There were significant inconsistencies in Petitioner's prior written statements and statements he made at the hearing.

At the hearing, Petitioner testified that he had asked Mr. Taylor to file a Notice of Appeal only once, while he was in the undersigned's courtroom for a Waiver of Indictment on the gun charges on August 20, 2012, shortly before he pled guilty before Judge Wiseman. Docket No. 37, p. 26. When he told Mr. Taylor to file a direct appeal, he wanted to appeal the issue that the plea agreement still provided that Mr. Ligon was charged with the guns, and he "wanted to address [that] on appeal." *Id.*, p. 28.

Petitioner stated in his § 2255 petition, however, "Defendant *after sentencing hearing* requested counsel to file a notice of appeal." Docket No. 1, p. 1 (emphasis added). Additionally, while Petitioner was proceeding pro se, he filed a "Motion for summary judgment and to dismiss the government's response as moot based on it's [*sic*] untimeliness." Docket No. 8. In the Certificate of Service attached to that Motion, Plaintiff stated as follows:

> I Robert Ligon do certify that the following motion was mailed via United States pre-paid mail at the following location and *I swear under penalty of perjury pursuant to 28 U.S.C. § 1746 that I advised my counsel to file a notice of Appeal when he came to visit me to discuss my plea done this 8 day of January 2014.*

Docket No. 8, p. 2.

Thus, Petitioner has told three different stories about when he directed Mr. Taylor to file a Notice of Appeal.

Second, Petitioner's position that he asked Mr. Taylor to file a Notice of Appeal simply does not make sense. Mr. Ligon testified that he wanted to avoid pleading guilty to the gun offense. Before the sentencing hearing, however, Mr. Taylor had told Petitioner, both orally and

in writing, that the Government would not agree to drop the gun charges. Petitioner knew this before he pled guilty. He also knew that he was getting a good deal because he would be sentenced to only 180 months total for both the drug conspiracy charge and the felon in possession charge because those sentences would run concurrently. Had he not taken the deal, the Government could have charged him under § 924(c), and, upon conviction, he would have received a mandatory minimum sentence of 20 years. He was, in fact, so eager to take the deal offered by the Government that he requested to have his guilty plea and sentencing on the same day. If Petitioner had, in fact, wanted the gun charge to be dropped, it makes no sense that he would have pled guilty to it.

Third, Petitioner testified that he learned in approximately October 2012, that Mr. Taylor had not filed a Notice of Appeal. At that point, however, he did not contact Mr. Taylor to discuss the appeal with him. In fact, he waited approximately 9 months before he filed the instant Petition. Petitioner's testimony in this regard is not credible.

On the other hand, Mr. Taylor was a credible witness. At the time he represented Mr. Ligon, he had 20 years of experience as a criminal defense lawyer in federal court. He testified that, if Mr. Ligon had requested that he file an appeal, he would have done so. There would have been no downside to Mr. Taylor in filing the Notice of Appeal. While he cannot specifically recall whether Mr. Ligon ever asked him to file a Notice of Appeal, the Court believes that he would recall discussing this issue with Mr. Ligon, because he testified that he had never previously been asked to file a Notice of Appeal in a case where the plea agreement waived Defendant's right to appeal.

For the foregoing reasons, the Court finds as a fact that Petitioner did not ask or instruct

his attorney to file a Notice of Appeal.

The Court now turns to the second directive in Judge Sharp's Order concerning the disposition of Petitioner's ineffective assistance claim. Petitioner has claimed that he received ineffective assistance of counsel because he told his attorney to file a Notice of Appeal but his attorney did not do so. Judge Sharp's Order is clear that the undersigned's recommendation is to be "[b]ased upon" the undersigned's finding on the factual issue discussed above.

The Court can and must base its recommendation on the controlling authority of *Campbell v. United States,* 686 F.3d 353 (6th Cir. 2012). In *Campbell,* defendant entered into a plea agreement, which partially waived his right to appeal his conviction and sentence. In a later proceeding to vacate his sentence pursuant to 28 U.S.C. § 2255, he argued that his attorney's failure to file an appeal despite his "express instruction to do so" constituted ineffective assistance of counsel. *Id*., p. 355. The district court in *Campbell* did not hold an evidentiary hearing concerning whether Mr. Campbell made the request that his attorney appeal his conviction. The government refused to concede that such an instruction was given, arguing that that fact was irrelevant to the ineffective-assistance question. *Id.,* p. 358 n.3. The *Campbell* Court remanded that case for an evidentiary hearing to determine whether petitioner had directed his attorney to file a Notice of Appeal. The *Campbell* Court stated in relevant part:

> If the district court finds that [petitioner directed his attorney to file
> a notice of appeal], his attorney's failure to file an appeal
> constituted ineffective assistance of counsel and [petitioner] is
> entitled to file a delayed appeal. If, on the other hand, the district
> court determines that Campbell provided no such instruction
> Campbell is not entitled to any further relief.

686 F.3d at 360.

As set forth above, this Court has determined that Petitioner did not give any instruction to his counsel to appeal his guilty plea. Under those circumstances, Petitioner is not entitled to relief in the form of a delayed appeal.

For the foregoing reasons, the undersigned recommends that the instant Petition be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


E. Clifton Knowles
United States Magistrate Judge